Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Sarah J. Crooks, OSB No. 971512
SCrooks@perkinscoie.com
C. Rian Peck, OSB No. 144012
CPeck@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Ben Stafford (*pro hac vice*)
BStafford@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Defendants*
*Legacy Health and Legacy Emanuel Hospital &*
*Health Center*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JULIANNE HUNTER, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>LEGACY HEALTH, LEGACY EMANUEL MEDICAL CENTER, LEGACY EMANUEL HOSPITAL & HEALTH CENTER, LEGACY HEALTH PARTNERS, LLC, RANDALL CHILDREN'S HOSPITAL AT LEGACY EMANUEL,<br><br>               Defendants. | No. 3:18-CV-02219-AC<br><br>CLASS AND COLLECTIVE ACTION<br><br>**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br><br>Pursuant to Fed. R. Civ. P. 26<br><br>ORAL ARGUMENT REQUESTED |

1-   DEFENDANTS' MOTION FOR PROTECTIVE ORDER

144995139.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## I.    CONFERRAL CERTIFICATION

In accordance with Local Rule 7-1(a), defendants Legacy Health and Legacy Emanuel Hospital & Health Center (collectively, "Legacy") state that they attempted to confer with counsel for Plaintiff Julianne Hunter ("Plaintiff" or "Hunter") in an effort to resolve this dispute without court intervention. But, as Plaintiff's counsel advised on July 9 during the court status conference, Plaintiff disputes Legacy's position and was unwilling to confer further.

## II.    MOTION

Legacy respectfully requests that this Court enter a protective order under Federal Rule of Civil Procedure 26(c) and Local Rule 26-4, limiting the scope of discovery at this phase of the litigation to: (1) system-wide policies and practices; and (2) documents from a maximum of 75 custodians from Legacy's central offices and at Legacy Emanuel Hospital & Health Center (e.g., Legacy Emanuel Medical Center and Randall Children's Hospital),[1] the hospital at which Hunter and all of the opt-in plaintiffs worked.

## III.    INTRODUCTION AND RELEVANT FACTS

Legacy Health is a nonprofit health system that comprises six hospitals and over 100 outpatient clinics in Southwest Washington and along the Willamette Valley in Oregon. (Declaration of Eve Logsdon in Support of Motion for Protective Order ("Logsdon Decl.") ¶ 2.) Systemwide, Legacy Health employs well over 5,000 hourly, non-exempt "nursing staff," and over 500 managers who supervise them. (*Id.* ¶¶ 5-6.) Legacy Health maintains a uniform, systemwide policy regarding meal and rest breaks for hourly, non-exempt employees. (*Id.* ¶¶ 7-10.) It requires that all employees who work the requisite number of hours be afforded the opportunity to take a 30-minute, unpaid, uninterrupted meal break. (*Id.* ¶ 9.) Additionally, employees must be provided the opportunity to take a paid 15-minute rest break for every segment of four hours (or major part of

---

[1] Randall Children's Hospital operates under the same license and at the same physical location as Legacy Emanuel Medical Center. For the sake of clarity, this motion refers to Randall Children's Hospital as "Randall," the adult side of the hospital as "Emanuel," and to them collectively as "Legacy Emanuel Hospital & Health Center."

2-    DEFENDANTS' MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

four hours) worked. (*Id.* ¶ 10.) Employees are prohibited from performing work before they clock in or after they clock out. (*Id.* ¶ 12.)

Although Legacy's overarching policy regarding meal and rest breaks is uniform, every hospital and clinic in the Legacy Health system is different, with different specialties, different patient populations, different staffing levels, and different demands. (Logsdon Decl. ¶¶ 3-4.) And, on a more granular level, every Legacy hospital, and every unit (or cost-center) in each hospital, differs from one another. (*Id.* ¶ 11.)

In this class and collective action lawsuit, Hunter alleges that Legacy violated federal and state wage and hour laws as a result of its supposed "longstanding policy . . . [of failing] to properly compensate non-exempt employees for work during meal periods and for work performed while 'off-the-clock.'" (ECF No. 1 ("Compl.") ¶ 1.) She further contends that, if the missed meals and off-the-clock work were properly accounted for, some or much of it would result in overtime pay, which nursing staff did not receive for that time. (*Id.* ¶ 44.) She also alleges that Legacy had a policy or practice of not providing nursing staff with the rest breaks that Oregon law requires. (*Id.* ¶ 126.)

Despite her limited exposure as a registered nurse in just three units at just one Legacy hospital, Hunter seeks to represent a collective and class action (under the Fair Labor Standards Act and Rule 23, respectively) of allegedly similarly situated "nursing staff"[2] at every Legacy hospital and nearly every outpatient clinic, including primary care, specialty, and urgent care clinics. (Compl. ¶¶ 48, 66; Logsdon Decl. ¶ 14; Declaration of Sarah Crooks in Support of Motion for Protective Order ("Crooks Decl."), Ex. 4, at 19-20.) There are four opt-ins to the putative collective action, all of whom were RNs and all of whom worked at Emanuel. (ECF Nos. 16, 21, 33; Logsdon

---

[2] Hunter has nebulously defined "nursing staff" to mean "nurses, nurse aides, nurse assistants, and other non-exempt hourly employees." (Compl. ¶ 1, n.1.) During a conferral call, Plaintiff's counsel provided a lengthy list of positions that they include in their definition of "nursing staff," which includes all hourly, non-exempt employees who have "nurse" as part of their job title, plus all technicians and medical assistants involved in patient care. (Crooks Decl. ¶ 2.) Plaintiff did not provide a list of job titles that she believes may fall under her definition of "nursing staff" in response to one of Legacy's interrogatories requesting that information. (*Id.* Ex. 4, at 18.)

3-    DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

144995139.1

Decl. ¶¶ 15-18.) Like Hunter, none of them were employed to work at hospitals other than Legacy Emanuel Hospital & Health Center during the class period, and none of them worked at any Legacy outpatient clinic. (Logsdon Decl. ¶¶ 15-18.)

Hunter has propounded incredibly broad, systemwide, discovery requests that would require Legacy to incur at least $1,204,395.00 to collect, review, and produce responsive electronically stored information. (Declaration of Alexa Stemmler in Support of Motion for Protective Order ("Stemmler Decl.") ¶ 3. *See also* Crooks Decl. Ex. 1.) Legacy respectfully requests that this Court limit the scope of discovery to systemwide policies and procedures, and a maximum of 75 custodians from Legacy's central offices and from Legacy Emanuel Hospital & Health Center, until such time as Hunter can present evidence warranting further discovery.

## IV.    ANALYSIS

### A.    This Court has broad discretion to limit the scope of pre-certification discovery.

The Federal Rules of Civil Procedure begin with an overarching instruction that courts and parties construe, administer, and employ the rules in a way that "secure[s] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In keeping with that instruction, upon a showing of good cause, this Court "may issue any protective order 'which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including any order prohibiting the requested discovery altogether, limiting the scope of discovery, or fixing the terms of disclosure.'" *Rivera*, 364 F.3d at 1063 (citing Fed. R. Civ. P. 26(c)). *See also* Fed. R. Civ. P. 26(b)(1) (discovery must be proportional to the needs of the case). Indeed, this Court enjoys "extensive control . . . over the discovery process," and "may be as inventive as the necessities of a particular case require . . . ." *United States v. CBS, Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982) (quoting 8 C Wright and Miller, *Civil Federal Practice & Procedure* § 2036, at 269).

This Court should grant Legacy's Motion for Protective Order and adopt Legacy's discovery management plan, because Legacy's proposal for limiting the scope of discovery at this stage of the

4-    DEFENDANTS' MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

144995139.1

proceedings provides Hunter a fair opportunity to investigate her class allegations, while protecting Legacy from unduly burdensome, expensive, and disproportionate discovery.

    **B.**    **Courts presiding over putative wage and hour class actions regularly limit the scope of discovery to the location where the named plaintiff worked until the plaintiff can demonstrate that expanded discovery is warranted.**

Given the potential for costly and burdensome discovery in putative class action cases, a district court's intervention is especially warranted at the pre-certification discovery stage of the proceedings. *See Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209-10 (9th Cir. 1975) (pre-certification discovery should be limited to information that will permit the plaintiff to make a case for certification). To that end, courts in this circuit require putative class action plaintiffs to show that the discovery they seek "is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424-25 (9th Cir. 1985) (affirming district court's rejection of broad classwide discovery, where such discovery would not aid in certification determination).

Following those principles, courts in this circuit (and others) have adopted a phased approach to pre-certification discovery in putative wage and hour class actions—an approach that strikes a balance between, on the one hand, providing the plaintiff sufficient discovery to obtain evidence to make a case for certification and, on the other hand, protecting the defendant from the onerous, far-reaching, unduly burdensome, and disproportionate classwide discovery that named plaintiffs often seek. *See, e.g.*, *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011) (adopting phased approach to pre-certification discovery and collecting cases). Striking that balance, courts permit plaintiffs to discover company-wide policies, but otherwise limit the scope of pre-certification discovery to the facility, branch, or location where the named plaintiff worked, leaving the door open for expanded discovery if the plaintiff uncovers evidence to substantiate company-wide violations. *See, e.g.*, *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998).

It appears that the first such court to take this balanced approach to pre-certification discovery was the District of Colorado in *Tracy*. The plaintiff in that case, just as in this one, sought

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

to certify a collective action under the Fair Labor Standards Act and a class action under Rule 23, based on the employer's alleged refusal to pay overtime wages. *Id.* at 303. The employer, for its part, presented evidence to the court that its written, company-wide policy regarding overtime was consistent with applicable law. *Id.* at 313. Citing the Ninth Circuit's instruction in *Mantolete* that named plaintiffs must demonstrate "that discovery is likely to produce substantiation of the class allegations," 767 F.2d at 1424, the *Tracy* court placed the burden on the plaintiff to offer evidence, going beyond mere assumptions and speculations, that the employer's "'real' national policy, an unpublished one, is contrary to the policy which has been published." 185 F.R.D. at 306. The court rejected the plaintiff's attempt to conduct discovery regarding all 400 of the employer's offices, instead determining that discovery of company-wide policies, targeted discovery from key custodians at the employer's central office, and discovery limited to the specific office where the named plaintiff worked would be sufficient for the plaintiff to locate evidence of such a national policy (if one existed). *Id.* at 306-11.

Numerous courts in the Ninth Circuit have adopted the same phased approach to pre-certification discovery in putative wage and hour class actions, especially where, as here, the named plaintiff's allegations regarding company-wide violations are based on assumption and speculation instead of actual evidence.[3]

---

[3] *See, e.g.*, *Salgado v. Land O'Lakes*, No. 1:13-CV-0798-LJO-SMS, 2014 WL 7272784, at *5 (E.D. Cal. Dec. 18, 2014) (in action alleging overtime and meal and rest break violations, limiting scope of discovery to facility where named plaintiff worked because his allegations about company-wide violations were "mere speculation"); *Coleman v. Jenny Craig, Inc.*, No. 11-cv-1301-MMA (DHB), 2013 WL 2896884, at *9 (S.D. Cal. June 12, 2013) (in action alleging off-the-clock, overtime, and meal and rest period violations, limiting discovery to Jenny Craig centers where named plaintiff worked, because plaintiff's unsupported assertions "that the alleged improper practices occurred at every center throughout the country is admittedly an assumption that the Court finds insufficient to justify expanding discovery beyond Plaintiff's market"); *Nguyen*, 275 F.R.D. at 507-08 (in action alleging meal period violations, limiting discovery to facility where named plaintiff worked until such time as plaintiff could present evidence supporting company-wide violations); *Franco v. Bank of Am.*, No. 09-cv-1364-LAB (BLM), 2009 WL 8729265, at *10-11 (S.D. Cal. Dec. 1, 2009) (in action alleging overtime and meal break violations, limiting scope of discovery to the 100 employees at two branches where named plaintiff worked, instead of 27,000 employees statewide); *Martinet v. Spherion Atl. Enters., LLC*, No. 07-cv-2178-W(AJB), 2008 WL 2557490, at * 6-7 (S.D. Cal. June 23, 2008) (in action alleging overtime and meal and rest period violations, limiting discovery to office where named plaintiff worked in light of estimated $550,000

6−  DEFENDANTS' MOTION FOR PROTECTIVE ORDER

**C.    Legacy's discovery management plan strikes the right balance between the parties' interests.**

Limiting the scope of discovery to a maximum of 75 custodians from Legacy's central offices and from Legacy Emanuel Hospital & Health Center at this phase of the proceedings strikes the appropriate balance between giving Hunter the opportunity to investigate whether her assumptions and speculations about classwide violations are substantiated, while protecting Legacy from the undue burden and expense of responding to Hunter's overbroad and disproportionate discovery requests.

**1.    Hunter's classwide allegations are unsupported by actual evidence.**

Hunter's allegations regarding Legacy's alleged systemwide policies and practices are nothing but unsupported speculation. During her tenure at Legacy, Hunter was a registered nurse only at Legacy Emanuel Hospital & Health Center. (Compl. ¶ 12; Logsdon Decl. ¶ 14.) What's more, she primarily worked only in one unit at Randall (the PICU) and intermittently in two other units (the neonatal ICU at Randall and the neurotrauma ICU at Emanuel). (*Id.*) Despite having only worked as a registered nurse, Hunter seeks to represent a class not just of registered nurses, but also of nurse assistants, nurse aides, medical assistants, and various kinds of technicians—and perhaps even more than that. (Compl. ¶ 1, n.1; Crooks Decl. ¶ 2.) And, despite only having worked in a hospital setting and only at one hospital, Hunter seeks to represent 5,000-plus nursing staff at all six of Legacy's hospitals and at the majority of Legacy's 100 primary care, specialty care, and urgent care clinics systemwide. (Compl. ¶¶ 13-14; Crooks Decl. Ex. 4, at 19-20.) In investigating her class allegations that supposedly pertain to all different kinds of nursing staff at all different kinds of hospitals and outpatient clinics, Hunter appears to have only sought the perspective of other registered nurses, all of whom also worked at Emanuel. (Crooks Decl. Ex. 4, at 15-16; Logsdon Decl. ¶¶ 15-18.)

Hunter's and the opt-in plaintiffs' experiences in their respective units at Legacy Emanuel Hospital & Health Center are not representative of the experiences of thousands of other nursing

---

cost to defendant to produce company-wide discovery; leaving door open for plaintiff to present facts warranting expanded discovery).

7-   DEFENDANTS' MOTION FOR PROTECTIVE ORDER

staff at around 100 hospitals and clinics across two states. It can hardly be disputed that hospitals, which are open 24/7 and which people go to during times of emergency, operate much differently from primary care clinics and other outpatient clinics, which are open during scheduled hours and which patients go to for non-emergent needs on an appointment-only basis. (Logsdon Decl. ¶ 3.)

Hospitals are also different from other hospitals. For instance, the majority of Legacy's hospitals are community hospitals that have relatively low patient volume and care for patients primarily from the local vicinity who have less acute medical needs. (Logsdon Decl. ¶ 3.) Legacy Emanuel Hospital & Health Center, on the other hand, is a regional hospital that serves patients across three states, is one of two Level I trauma centers in the State of Oregon, and operates one of two dedicated children's hospitals in the State of Oregon. (*Id.* ¶ 4.) It is unlike any other hospital in the Legacy health system: it is the largest in terms of number of units, it has the highest concentration of nursing staff and managers, it has the largest patient volume, and it cares for the most acute patient needs. (*Id.* ¶¶ 4-5.)

Every unit within a hospital is also different from every other unit within that hospital. Using Legacy Emanuel Hospital & Health Center as an example, there are 136 separate patient care units. (Logsdon Decl. ¶ 4.) Each unit operates as a standalone cost center and has its own staff, its own management, and its own procedures, protocols, and practices. (*Id.* ¶¶ 4, 6, 11.)

Because of these myriad differences, Legacy maintains systemwide policies regarding wage and hour issues but provides individual managers with discretion on how to implement them to best fit the needs of their units. (Logsdon Decl. ¶¶ 9-12.) Simply put, Legacy's systemwide policy is that managers must operate their units in a way that complies with the law: hourly non-exempt employees must be afforded the opportunity to take a 30-minute, unpaid, uninterrupted meal break if they work the requisite number of hours during their shift; they must be afforded the opportunity to take a 15-minute paid rest break per every segment of four hours worked; they must not perform work before they clock in or after they clock out; and they must be paid appropriately for overtime work. (*Id.* ¶¶ 9-10, 12.)

8-    DEFENDANTS' MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Individual unit managers are trained regarding these systemwide policies, but they have leeway to craft plans that fit the unique needs of their units. (Logsdon Decl. ¶ 13.) The PICU where Hunter worked, for example, cares for children with the highest levels of acuity, which requires a 1:1 nurse-to-patient ratio. (*Id.* ¶ 11.) Other units at Legacy Emanuel Hospital & Health Center have patients with different levels of need and, thus, are staffed differently. (*Id.*) Based on these differences, managers use different systems for making meal and rest breaks available to the nursing staff on their units. (*Id.*) For example, some managers hire "breaker nurses" for their units, who do not have assigned patient loads and instead relieve other nurses for meal and rest breaks. (*Id.*) Others direct the nurses on their unit to use the "buddy system," taking turns handing off each other's patient loads during breaks. (*Id.*)

Given Legacy's overarching systemwide policy and the variation in practices from unit-to-unit,[4] Hunter's classwide allegations are based on her assumptions, not actual evidence. She is thus in no different a position than the named plaintiffs in the *Tracy* line of cases. And, just as with those cases, the Court should limit Hunter's discovery to the one hospital where she worked until she can produce evidence to substantiate her allegations of unlawful systemwide policies or practices.

### 2. Hunter's overbroad and disproportionate discovery requests impose undue burden and expense on Legacy.

The discovery that Hunter has propounded appears less tailored to substantiating her class allegations regarding Legacy's supposed "longstanding," "sweeping," "generally applicable" policies and practices, (Compl. ¶¶ 2, 9, 58), and more tailored toward imposing as much financial pressure on Legacy as possible. The majority of her discovery requests are broadly worded, seeking documents from every employee systemwide regarding every putative class and collective action member systemwide.[5] Moreover, many of her requests seek highly specific and individualized

---

[4] In addition, given these broad variations from unit-to-unit, Hunter's likelihood of certifying a class of nursing staff at just Legacy Emanuel Hospital & Health Center alone is remote. Certifying a class broader than that: next to impossible.

[5] *See, e.g.*, Crooks Decl. Ex. 3, at RFP No. 61 (requesting "[a]ll emails and communications to or from any of Defendant's employees, managers, supervisors, executives, principals, or agents" that include dozens of search terms unilaterally selected by Plaintiff's counsel). Specifically,

9-   DEFENDANTS' MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

information regarding putative class and collective action members, which is inconsistent with (if not antithetical to) her repeated assertions that this is a case about systemwide policies and practices "that did not depend on the personal circumstances" of individual employees. (Compl. ¶ 58.)[6]

Legacy has agreed to provide: documents and information regarding its policies, procedures, and practices that apply systemwide; documents pertaining to Hunter; and documents from a subset of custodians from Legacy's central offices and from manager custodians at Legacy Emanuel Hospital & Health Center. As the *Tracy* line of cases recognized, these documents and information will be sufficient for Hunter to investigate whether there is an unlawful systemwide policy or practice. However, complying in full with Hunter's overbroad and disproportionate discovery requests would result in extraordinary expenses to Legacy—expenses that are undue in light of the speculative nature of Hunter's allegations, the lack of "importance of the discovery in resolving the issues," and the fact that the "burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1), (c).

Indeed, systemwide, Legacy has around 5,000 members of its "nursing staff" (as Legacy best understands that term) and around 500 managers who supervise them. (Logsdon Decl. ¶¶ 5-6.) Just to collect, process, and review emails—and only emails—from the approximately 500 managers *alone* would cost Legacy $1,204,395.00[7] up front, and would quickly increase by hundreds of thousands when factoring in the monthly data hosting fee of $45,937.50. (Stemmler Decl. ¶ 3, Exs. 1, 3.) *Compare Martinet*, 2008 WL 2557490, at *6 (finding a $550,000 pre-certification discovery expense to be unduly burdensome). Moreover, reading Plaintiff's Request for Production Number 61 literally, she seeks all emails "to or from any of [Legacy's] employees, managers, supervisors, executives, principals, or agents"—even if limited to "nursing staff" and

---

Legacy seeks the Court's relief from Plaintiff's Interrogatory Nos. 1-6 and 8-9, and from Plaintiff's Request for Production Nos. 1-3, 6-18, 20-30, 32-35, 37-38, 41-43, 56-58, and 60-61.

[6] *See, e.g.*, *id.* at RFP Nos. 6-8 (requesting timekeeping records, documents reflecting attendance at any trainings whatsoever, and documents relating to new hire paperwork for every putative class and collective action member systemwide).)

[7] In its discovery responses, Legacy initially estimated that the processing and review costs for 500 custodians would be $1,608,823.38. (*See* Crooks Decl. Ex. 1, at RFP Response No. 34.) It has since fine-tuned its estimate and revised it to $1,204,395.00.

10-  DEFENDANTS' MOTION FOR PROTECTIVE ORDER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

"managers," the number of custodians would increase more than ten-fold (from 500 to 5,500), meaning the collection, processing, and review estimates would increase exponentially, as well.

By contrast, limiting the scope of electronic discovery to a maximum of 75 custodians—limited to managers at Legacy Emanuel Hospital & Health Center, as well as key people from Legacy's central offices who have information regarding systemwide policies, practices, and procedures—would cost Legacy an estimated $199,014.52 (plus a monthly hosting fee of $6,890.63). (Stemmler Decl. ¶ 4, Exs. 2, 3.) Using this approach, Hunter would have the opportunity to seek electronic documents from nearly half of the managers at Legacy Emanuel Hospital & Health Center, in addition to custodians who have documents and information regarding systemwide policies, procedures, and practices.[8] This is still a significant expense. However, Legacy acknowledges that this expense is more in line with what is proportional to the needs of the case at this time. It therefore requests that the Court grant this Motion for Protective Order and limit the scope of discovery at this phase of the litigation to a maximum of 75 total custodians from Legacy's central offices and Legacy Emanuel Hospital & Health Center, in addition to the systemwide policies and practices that Legacy has already agreed to produce.[9]

---

[8] To be clear, Legacy does not agree to collect and produce all responsive hard-copy documents from those 75 custodians, because that would increase discovery expenses dramatically. Further, Legacy does not agree to deviate from Federal Rule of Civil Procedure 30(a)(2)(A)(i), which provides that a party must seek leave of court to depose more than 10 witnesses.

[9] Should this Court determine that broader discovery is warranted in this case, Legacy respectfully requests that this Court condition the broader discovery on Plaintiff's undertaking of half of Legacy's discovery expenses. *See* Fed. R. Civ. P. 26(c)(1)(B) (in granting motion for protective order, court may "specify[] terms, including . . . the allocation of expenses, for the disclosure of discovery"). Although the presumption is that responding parties must bear their own discovery expenses, it is appropriate to order cost-sharing when the discovery is asymmetrical (e.g., one party has little relevant documentation and the other party has substantially more), when the cost of responding to discovery is excessive, and when plaintiffs' counsel are in a position to be able to invest in their own case. *See Boeynaems v. LA Fitness Int'l, LLC*, No. CIV.A. 10-2326, 2011 WL 4048512 (E.D. Pa. Sept. 12, 2011) (so holding). Those requirements are met here, and cost sharing is appropriate. (*See* Crooks Decl. ¶ 7; *compare id.* Exs. 1-2, *with id.* Exs. 3-4.)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

144995139.1

## V.    CONCLUSION

For the reasons stated above, Legacy respectfully requests that the Court grant Legacy's

Motion for Protective Order.

DATED:  July 23, 2019                         PERKINS COIE LLP


                                              By: */s/ Sarah J. Crooks*
                                                  Stephen F. English, OSB No. 730843
                                                  SEnglish@perkinscoie.com
                                                  Sarah J. Crooks, OSB No. 971512
                                                  SCrooks@perkinscoie.com
                                                  C. Rian Peck, OSB No. 144012
                                                  CPeck@perkinscoie.com
                                                  1120 N.W. Couch Street, 10th Floor
                                                  Portland, OR  97209-4128
                                                  Telephone:  503.727.2000
                                                  Facsimile:  503.727.2222

                                                  Ben Stafford (*pro hac vice*)
                                                  BStafford@perkinscoie.com
                                                  1201 Third Avenue, Suite 4900
                                                  Seattle, WA 98101
                                                  Telephone: 206.359.8000
                                                  Facsimile: 206.359.9000

                                                  *Attorneys for Defendants*
                                                  *Legacy Health and Legacy Emanuel Hospital*
                                                  *& Health Center*

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

144995139.1