UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JULIANNE HUNTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEGACY HEALTH, LEGACY EMANUEL MEDICAL CENTER, LEGACY EMANUEL HOSPITAL & HEALTH CENTER, LEGACY HEALTH PARTNERS, LLC, RANDALL CHILREN'S HOSPITAL AT LEGACY EMANUEL,<br><br>Defendants. | Case No. 3:18-CV-002219-AC<br><br>OPINION AND ORDER |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Julianne Hunter ("Hunter"), individually and on behalf of others similarly situated, brings this action against Defendants Legacy Health, Legacy Emanuel Medical Center, Legacy

PAGE 1 – OPINION AND ORDER

Emanuel Hospital & Health Center, Legacy Health Partners, LLC, and Randall Children's Hospital at Legacy Emanuel (collectively, "Legacy") under the Fair Labor Standards Act ("FLSA") and Oregon law, alleging Legacy failed to pay overtime compensation for automatic time deductions and "off-the-clock" work, failed to pay all wages due upon separation of employment, and took unlawful deductions from employee wages. Currently before the court are the parties' competing discovery motions: Legacy's Motion for a Protective Order, (Defs.' Mot. for Protective Order, ECF No. 39 ("Defs.' Mot.")), and Hunter's Motion to Compel (Pl.'s Mot. to Compel Defs.' Responses to Written Discovery, ECF No. 43 ("Pl.'s Mot.")). Both Motions seek to define the scope of precertification discovery in this case. For the reasons that follow, Hunter's Motion is GRANTED, in part, and Legacy's motion is DENIED.

*Background*

Legacy is a nonprofit health system with facilities spread across southern Washington and the Willamette Valley in northern Oregon. (Decl. of Eve Logsdon in Supp. of Defs.' Mot. for Protective Order, ECF No. 39 ("Lodgsdon Decl."), ¶ 2.) Legacy operates six hospitals, 27 primary care clinics, 90 specialty clinics, and 19 urgent care clinics. (*Id.*) Two of Legacy's hospitals, Legacy Emanuel Medical Center ("Emanuel") and Legacy Good Samaritan Medical Center, are regional hospitals serving patients from Oregon, Washington, and Idaho. (*Id.* ¶ 3.) Legacy's other hospitals are community hospitals, which serve patients locally. (*Id.*) All of Legacy's clinics are out-patient facilities which serve patients by appointment, with the exception of Legacy's urgent care clinics, which provide care to patients by appointment and walk-in. (*Id.*) Currently, Legacy employs 4,990 registered nurses ("RNs"), certified nursing assistants, certified hospital technicians, medical assistants, and emergency department technicians in its facilities systemwide. (*Id.* ¶ 5.)

Emanuel is a unique facility within the Legacy health system and the State of Oregon. In addition to serving patients from a large geographic area, Emanuel is a Level I Trauma Center, a "comprehensive regional facilit[y] that [has] high patient volumes and [is] capable of providing total care for every aspect of injury, from prevention, to treatment, to rehabilitation." (*Id.* ¶ 4.) Emanuel provides treatment for the most serious conditions, including trauma sustained in catastrophic accidents, gunshot wounds, and infectious diseases. (*Id.*) Emanuel is one of only two Level I trauma centers in Oregon, and the only facility of its type in the Legacy health system. (*Id.*)

Housed within Emanuel is Randall Children's Hospital ("Randall"), a similarly unique institution in that it is one of only two children's hospitals in Oregon and the only children's hospital in the Legacy health system. (*Id.*) Randall provides regional, comprehensive care that includes children's emergency services, neonatal and pediatric intensive care, pediatric surgery, cancer treatment, inpatient and outpatient care, and physical rehabilitation. (*Id.*) Together, Emanuel and Randall comprise Legacy's largest hospital, with 136 separate patient care units or "cost centers." (*Id.*) Indeed, there are presently 1,625 RNs, certified nursing assistants, certified hospital technicians, medical assistants, and emergency department technicians employed by Legacy at Randall and Emanuel. (*Id.* ¶ 5.)

On March 23, 2009, Hunter began employment with Legacy as a Critical Care RN, working the night shift in Randall's Pediatric Intensive Care Unit ("PICU"). (*Id.* ¶ 14.) She also occasionally worked in Randall's Neonatal Intensive Care Unit ("NICU") and Emanuel's Neurotrama Intensive Care Unit ("NT-ICU") as an extracorporeal membrane oxygenation ("ECMO") specialist. (*Id.*) When she resigned on April 20, 2016, Hunter still worked primarily

PAGE 3 – OPINION AND ORDER

as a Critical Care RN in the PICU, and sporadically served as an ECMO specialist in the NICU and NT-ICU. (*Id.*)

During her tenure as a Legacy employee, Hunter alleges she was required, in accordance with a company-wide policy or practice, to remain responsible for patient care throughout her shift, and was expected to perform duties off-the-clock. Specifically, Hunter claims nurses did not clock in and out to take statutorily mandated, uninterrupted meal breaks. Instead, Legacy "assume[d] nurses were able to find a 30-minute block of time to enjoy a bona fide meal period," and automatically deducted 30 minutes from each shift. (Class and Collective Action Compl., ECF No. 1 ("Compl."), ¶ 2.) Because nurses remain on duty — required to "respond to calls from their patients, doctors, patients' families, other nursing staff and hospital staff, attend to the normal demands of the job, and otherwise respond to emergencies" — an uninterrupted, 30-minute meal break was rare. (*Id.* ¶ 32.) Hunter contends Legacy's withholding of compensation for such breaks was wrongful. Hunter also alleges she was required to perform work such as cleaning, preparing and organizing equipment, interacting with patients, assisting other hospital staff, charting, and various other tasks before she clocked in and after she clocked out for the day. (*Id.* ¶¶ 33, 34.) She thus alleges Legacy failed to compensate her for work she was required to perform "off-the-clock."

On December 26, 2018, Hunter filed this collective and class action lawsuit, alleging Legacy failed to pay her and class and collective members overtime to which they were entitled. Hunter contends Legacy did not include the time worked during meal periods or the time spent performing additional tasks before and after her shift in the total number of hours for which she was compensated in any given work week. (*Id.* ¶ 44.) The Complaint alleges this unpaid time is compensable under the FLSA and Oregon law because: "(1) Plaintiff and Collective and Class

PAGE 4 – OPINION AND ORDER

members were not completely relieved of their duties, (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, or (3) they entirely skipped the meal and rest period due to work demands." (*Id.*)

Hunter defines the FLSA Collective members and the Oregon Class members as "people who are or have been employed by [Legacy] as nurses, nurse aides, nurse assistants, and other similar hourly and non-exempt employees" working in either the United States (FLSA) or in the State of Oregon (Oregon) "that have been subject to an automatic time deduction by Defendants" within either the three years (FLSA) or the six years (Oregon) preceding the filing of the Complaint. (*Id.* ¶¶ 13, 14.) At present, four individuals have opted-in to the collective FLSA action alongside Hunter. All four work or have worked at Emanuel as RNs. (Logsdon Decl. ¶¶ 15–18.)

On March 22, 2019, Hunter served Legacy with her first set of interrogatories and requests for production. (Pl.'s Mot., Ex. 1.) Hunter's numerous discovery requests seek to implicate Legacy's policies, practices, and personnel systemwide. Notably, Requests for Production 12 and 13, and Interrogatories 1 and 2, explicitly seek information related to class certification. Those requests provide:

> Request No. 12 — A list identifying all Putative Oregon Class Members from December 26, 2012, to the present. The list should include each Putative Oregon Class Members' name, job title(s), last-known address, last-known phone number, last known email address, dates of employment, location at which the employee worked, and social security numbers. (*Id.* at 22.[1])

> Request No. 13 — A list identifying all Putative Collective Members from December 26, 2015, to the present. The list should include each Putative Collective Members' name, last-known address, last-known phone number, last-known email

---

[1] Exhibit 1 of Hunter's Motion includes copies of Plaintiff's First Set of Interrogatories and Plaintiff's First Set of Requests for Production. Both are separately paginated. Thus, when citing to Exhibit 1 of Plaintiff's Motion, the court cites the ECF page numbers to avoid confusion.

PAGE 5 – OPINION AND ORDER

address, dates of employment, location at which the employee worked, and social security numbers. (*Id.*)

Interrogatory No. 1 — Identify all Putative Class Members, stating each individual's (a) full name; (b) job title and dates of employment with Defendant; (c) employment location at which the individual worked for Defendant; (d) last known residence, telephone number, and cell phone number; and (e) last known personal email address. (*Id.* at 8.)

Interrogatory No. 2 — Identify all Putative Collective Members, stating each individual's (a) full name; (b) job title and dates of employment with Defendant; (c) employment location at which the individual worked for Defendant; (d) last-known residence, telephone number, and cell phone number; and (e) last known personal email address. (*Id.*)

On June 14, 2019, Legacy provided limited responses and extensive objections to Hunter's requests, and otherwise refused to provide any responsive documents. (Decl. of Sarah J. Crooks in Supp. of Defs.' Mot. for Protective Order, ECF No. 42 ("Crooks Decl."), Exs. 1, 2.) On July 23, 2019, both parties filed competing discovery Motions, Legacy seeking a protective order to significantly limit the scope of discovery requested, and Hunter seeking an order to compel production of class and collective lists to support certification. Oral argument was held on both Motions on September 19, 2019. At present, Legacy has not provided Hunter with any responsive documents, but has indicated a willingness to do so if Hunter agrees to share the financial burden of production.

*Legal Standards*

I.   Protective Order

Under Federal Rule of Civil Procedure ("Rule") 26(c), a court is authorized, upon a showing of good cause, to issue an order "protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Such orders may include "prescribing a discovery method other than the one selected by the party seeking discovery" or "limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P.

PAGE 6 – OPINION AND ORDER

26(c)(1)(C), (D). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex. rel Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). The good cause analysis requires a court to inquire as to whether the information requested is sought for legitimate purposes or whether such information will violate a privacy interest. *So v. Land Base, LLC*, No. CV 08-0336 (AGRx), 2009 WL 2407954, at *2 (C.D. Cal. Aug. 4, 2009) (citing Schwarzer, Tashima & Flagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL ¶ 11:1074). If good cause exists, the court must then balance the interest of permitting discovery against the burdens inflicted on the parties. *Id.*

II.   Motion to Compel

Rule 37 provides that a party seeking discovery may move the court for an order "compelling an answer, designation, production, or inspection" if a party fails to answer a properly submitted interrogatory or an order requiring a party to supplement an "evasive or incomplete disclosure, answer, or response." FED. R. CIV. P. 37(a)(3)(B), 37(a)(4). The party seeking to compel discovery is burdened with demonstrating the information he or she seeks is relevant, but "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (first citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); then citing *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). The court has broad discretion to determine the relevancy of the information sought, and the requested information need not be admissible to be discoverable. *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

/ / / / / /

*Discussion*

I.  Legacy's Motion

Legacy moves for a protective order, seeking relief from Hunter's Requests for Production 1–3, 6–18, 20–30, 32–35, 37, 38, 41–43, 56–58, 60, and 61; and Interrogatories 1–6, 8 and 9. (Defs.' Mot., at 9–10, n.5.) Legacy requests this court to use its broad discretion to limit the scope of precertification discovery by using a "phased approach." In apparent keeping with this approach, Legacy proposes limiting discovery at this phase of the litigation to "(1) system-wide policies and practices; and (2) documents from a maximum of 75 custodians from Legacy's central offices and at Legacy Hospital & Health Center (e.g., Legacy Emanuel Medical Center and Randall Children's Hospital), the hospital at which Hunter and all of the opt-in plaintiffs worked." (*Id.* at 2.) Legacy does clarify which 75 custodians would be responsive or how they would be chosen. Should the court deny its Motion and find Hunter's discovery requests reasonable, Legacy requests the court to "condition broader discovery on Plaintiff's undertaking half of Legacy's discovery expenses." (*Id.* at 11, n.9.)

Hunter contends she is amenable to sampling as Legacy proposes, but indicates the parties have not met and conferred to negotiate a reasonable sampling procedure, an acceptable list of email search terms, which custodians will be chosen for production, and to otherwise come to an agreement regarding a range of broader discovery issues. (Pl.'s Opp'n, at 3, 8.) Because there has been no conferral between the parties, Hunter asserts there is no basis for the court to make a broad ruling regarding general discovery. Hunter argues that she seeks only the identities and contact information of collective and class members at this time, that she is open to sampling as Legacy proposes so long as the parties properly confer to define its parameters, and that she will narrow her discovery requests based on her investigation of the class and collective allegations.

PAGE 8 – OPINION AND ORDER

Legacy cannot demonstrate good cause to justify the broad sweep of the protective order it requests here. The only information currently sought by Hunter is reasonably related to the issue of certification, and Legacy's request for a protective order, as well as its claims of good cause, take aim at Hunter's requests for more general discovery. Hunter has assured the court her general discovery requests will be tailored in the wake of precertification investigation, the thus Legacy cannot demonstrate any specific harm or prejudice that will result if this court declines to grant a protective order and allows the parties time to confer and negotiate more general discovery matters after such investigation takes place. Accordingly, Legacy's Motion is DENIED.

## II.    Hunter's Motion

Hunter moves the court to compel Legacy's responses to her discovery requests, "namely to disclose the identities and contact information of potential class and collective members across all of Defendants' hospital and clinic locations." (Pl.'s Mot. to Compel Defs.' Resps. to Written Discovery, ECF No. 43 ("Pl.'s Mot."), at 2.) Specifically, Hunter seeks Legacy's responses to Interrogatories 1 and 2, and Requests for Production 12 and 13. Hunter represents she is willing to engage in, and pay for, the notice process described in *Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554, 557, 57 Cal.Rptr.3d 197, 199 (2007), [2] to assuage any privacy concerns regarding the release of personal information Legacy employees otherwise expect to be kept private. (Pl.'s Mot., at 6.) Hunter argues the disclosure of such information is necessary "to

---

[2] The Notice provided to putative class members in *Belaire-West* advised all current and former Belaire-West employees of the lawsuit and its core allegations, explained who might be a member of the proposed class, described the investigation being performed by the plaintiff's attorney, and provided the following statement: "[t]o assist in the investigation, the attorneys for the Plaintiffs wish to gather information regarding the nature of the work you do (or used to do), while employed by Belaire-West, including the amount of any overtime you may have worked. They have sought to obtain your names, addresses and telephone numbers, so that they can communicate with you about the allegations made in the lawsuit." The notice explicitly directed those recipients who did not wish to have their contact information disclosed to opt out by a specific date.

PAGE 9 – OPINION AND ORDER

put Plaintiff on equal footing with Defendants." (*Id.*) Once Hunter has the necessary information to investigate her class and collective claims, she contends the parties can confer to narrow the scope of the classwide discovery previously requested. (Pl.'s Opp'n to Defs.' Mot. for Protective Order, ECF No. 46 ("Pl's Opp'n"), at 10–11.)

In response, Legacy explains it is willing to provide the names and contact information for a sample of 400 employees who worked at Emanuel during the relevant time period, provided Hunter uses the *Belaire-West* notice procedure to protect employee privacy.[3] (Defs.' Opp'n to Pl.'s Mot. to Compel, ECF No. 45 ("Defs.' Opp'n"), at 2–3.) Legacy thus contends the only disputes that remain with respect to Hunter's Motion are "(1) the scope of the employees who will receive a *Belaire-West* notice (including requiring Plaintiff to provide clarity on what "nursing staff" means) and (2) the personal information that Legacy is required to provide Plaintiff regarding the employees who do not opt-out of having their information shared with Plaintiff's counsel." (*Id.* at 3.)

### A. Limiting Precertification Discovery

Discovery prior to class certification is wholly within the discretion of the court. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted."). Whether a lawsuit may be maintained as a class action must be determined as soon as practicable, FED. R. CIV. P. 23(c)(1), but "discovery is likely warranted where it will resolve factual issues necessary for [the court to make the] determination." *Currie-White v. Blockbuster, Inc.*, No. C 09-2593 MMC (MEJ), 2010 WL

---

[3] In the alternative, should the court determine Legacy must disclose the identities and contact information of collective and class members systemwide, Legacy requests the court limit such disclosure to a sample of 400 employees total.

PAGE 10 – OPINION AND ORDER

1526314, at *2 (N.D. Cal. Apr. 15, 2010). Generally, discovery at the precertification stage of a putative class action "is limited to certification issues: *e.g.*, the number of class members, the existence of common questions, typicality of claims, representative's ability to represent the class, etc." *Babbit v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 WL 605652, at *2 (N.D. Cal. Nov. 30, 1992). Thus, a plaintiff seeking precertification discovery bears the burden of making a prima facie showing that the class action requirements of Rule 23 are satisfied, or, in the alternative, demonstrating "that discovery is likely to produce substantiation of the class allegations." *Manolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). Failure to allow discovery when it is necessary to determine whether a class or subclass exists is an abuse of discretion. *Doninger v. Pacific Nw Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975)).

"[T]he disclosure of names, addresses, and telephone numbers is a common practice in the class action context." *Arthur v. Murphy Co.*, Case No. 1:10-CV-3142-CL, 2012 WL 13047759, at *1 (D. Or. Nov. 8, 2012) (citing *Artis v. Deere & Co.*, 276 F.R.D. 248, 352 (N.D. Cal. 2011)). In similar FLSA actions, however, courts have sometimes limited the scope of discovery during the precertification stage if the putative class is broad and the named plaintiff has provided insufficient facts to suggest the violative conduct occurred companywide. *See Currie White*, 2010 WL 1526314, at *3 (finding the plaintiff's request for the contact information of over 9,000 individuals working in over 500 different stores unduly burdensome on the defendant, and instead ordering the production of only the names and contact information of all current and former employees of the two stores at which the plaintiff worked and of an additional ten stores of the plaintiff's choosing); *see also Silva v. Avalonbay Communities, Inc.*, No. CV 15-4157-JAK (PLAx), 2015 WL 11428549, at *3 (C.D. Cal. Sept. 2, 2015) (requiring the defendant to produce

PAGE 11 – OPINION AND ORDER

contact information for only those class members who worked in the same facility as plaintiff when defendant employed over 1,400 putative class members in 29 different job positions across 132 locations throughout California).

Hunter argues there is no reason to limit the disclosure of collective and class members' identities and contact information to those from a single hospital.[4]  (Pl.'s Mot., at 5.)  Hunter contends she is alleging systemwide violative practices across all Legacy hospitals and clinics, and thus the names and contact information of *all* class and collective members are relevant to determining whether Rule 23 certification is appropriate.  Accordingly, Hunter alleges limiting precertification discovery to one hospital is improper.

To support her argument, Hunter cites *Cedano v. Thrify Payless, Inc*, No. CV-10-237-HZ, 2011 WL 8609402, at *1 (D. Or. May 9, 2011).  There, the plaintiff, who worked as an assistant store manager ("ASM") in one of defendant's Rite Aid stores, brought a class action suit alleging the defendant misclassified him as exempt from overtime wages in violation of Oregon Wage and hour laws.  Prior to certification, the plaintiff filed a motion to compel, seeking the identities of all store managers and district managers who worked in Rite Aid stores in Oregon, and the names, addresses, dates of employment, and employment locations for all ASMs employed by the defendant nationwide.  In opposition, the defendant relied heavily on the plaintiff's burden to make a prima facie Rule 23 showing.  Judge Hernández, however, determined a Rule 23 showing was not "mandatory in all cases, and it very well may be the case that courts routinely do not require

---

[4] With respect to the automatic deductions taken for meal breaks, Legacy insists there are no individuals to disclose during the relevant time period because Legacy changed their time keeping system on June 14, 2015.  Since that time, employees have been required to clock in and out for their breaks and are not subject to the automatic deduction policy complained of by Hunter.  However, potential Oregon class members were subjected to the automatic deduction policy from December 26, 2012 until Legacy changed their time keeping system in 2015.  Thus, discovery could still be appropriate across all Oregon facilities.

PAGE 12 – OPINION AND ORDER

such a showing." *Id.* at *8. Looking to the allegations in the complaint, Judge Hernández determined the information the plaintiff sought was likely to produce substantiation of the class allegations, and that denial of such information would be improper. *Id.* Hunter urges this court to follow *Cedano* and find that denial of the names and contact information of *all* collective and class members would be improper. (Pl.'s Mot., at 5.)

Conversely, Legacy seeks to limit discovery of class and collective member identities and contact information, alleging Hunter's class and collective claims are speculative. Specifically, Legacy asserts Hunter's limited experience as a Legacy employee allows her to only speculate as to the experiences of the many nurse assistants, nurse aids, medical assistants, and various kinds of technicians falling under her definition of "nursing staff" in six hospitals and 100 primary, specialty, and urgent care clinics across two states. (Defs.' Opp'n, at 6.) In other words, Legacy contends Hunter's experience is not representative of the experiences of almost 5,000 uniquely situated individuals who purportedly constitute "nursing staff." Hunter's employment was limited to Emanuel and Randall; she worked within one of three intensive care units —the PICU, her primary unit, or the NICU and the NT-ICU, where she worked on occasion; and she primarily worked only as an RN. (*Id.*) The four opt-in plaintiffs are similarly unrepresentative, as all are RNs who work or worked at Emanuel. (*Id.* at 3.) Legacy thus argues "Hunter's proposed class definition is not narrowly tailored, and her unsupported assertion that such a broad class could be certified is implausible." (*Id.* at 8.)

Legacy has provided evidence its systemwide policy requires that managers operate their specific unit in accordance with the law — to wit, giving hourly, non-exempt employees a 30-minute, uninterrupted, unpaid meal break — but that due to significant differences between the demands of specific positions, facilities, and even between individual units in the same facility,

PAGE 13 – OPINION AND ORDER

managers are given discretion to implement that policy in keeping with the individual needs of the unit. (Logsdon Decl. ¶¶ 9–11.) The evidence before the court also indicates Legacy has a systemwide policy that hourly, non-exempt employees are not permitted to do work off-the-clock. (*Id.* ¶ 12.) The experiences of "nursing staff" therefore may differ significantly between positions, units, and facilities. Thus, Legacy argues that "if [it] maintains the corporate, top-down policies and practices that Hunter contends exist, a vast number of interviews regarding individual employees' personal experiences is unnecessary," and limiting the scope of precertification discovery to a random sample of 400 class and collective members working at Emanuel, which has over 100 separate units, will provide "ample opportunity" to investigate whether the class and collective allegations can be substantiated.

*Currie-White* is instructive here. In that case, the plaintiff filed a class action lawsuit alleging Blockbuster failed to provide suitable seats for its employees working as customer service representatives in violation of California law. *Currie-White*, 2010 WL 1526314, at *1. Seeking certification of the Rule 23 class — "All persons who, during the applicable statute of limitations, were employed by Blockbuster in the State of California in the position of Customer Service Representative, or similar position that regularly involves or has involved the operation of a cash register, and were not provided with a seat" — the plaintiff sought the name, address, phone number, position held, and store location of every person who had worked as a customer service representative or similar. *Id.* The request ultimately implicated 9,000 individuals across 500 stores throughout California, prompting Blockbuster to object on the grounds that the request was unduly burdensome and violated the privacy of its employees. *Id.* at *2. Blockbuster thus argued discovery of class member identities and contact information should be limited to the two stores in which the plaintiff worked.

PAGE 14 – OPINION AND ORDER

The *Currie-White* court found the plaintiff was entitled to the contact information of putative class members in both stores where she worked, and in other stores throughout the state, to substantiate the classwide allegations and to meet the certification requirements of Rule 23. *Id.* at *3. However, the court agreed with Blockbuster that production of contact information for over 9,000 individuals in 500 stores would be unduly burdensome in the precertification phase, and limited production of contact information to the two stores in which the plaintiff worked, plus an additional 10 stores of the plaintiff's choosing. *Id.* The *Currie-White* court determined such an arrangement was appropriate because "the job duties of Defendant's in-store employees are likely similar to the Plaintiff's."

Here, Hunter seeks the names and contact information of Oregon class members working across all of Legacy's facilities dating as far back as 2012. As in *Currie-White*, Hunter's request encompasses thousands of individuals, almost 5,000 who are currently employed by Legacy as "nursing staff," and likely many more who worked for Legacy in years past. Such a request could prove burdensome at this stage of the litigation. Furthermore, Legacy's systemwide policy is not unlawful on its face — it requires all non-exempt employees to receive uninterrupted, unpaid meal and rest breaks as required by law. In practice, its policy is implemented in ways specific to each unit, of which there are over 100 in Emanuel alone. Though all Legacy employees were subject to the automatic deduction policy, the conduct complained of appears to be a function of Hunter's specific job in any one of three intensive care units. There, nurses must constantly attend to the needs of medically vulnerable patients, so much so that the demands of the job could reasonably interfere with a 30-minute meal break. Hunter presents no evidence that other, less involved units, or other types of facilities, face the same kind of demands which necessitate nurses staying on-call during their meal breaks. Indeed, it is difficult to imagine the day-to-day operations of a regular

PAGE 15 – OPINION AND ORDER

specialty clinic requiring the constant care and attention that is essential to the operation of an intensive care unit in a Level 1 trauma center like Emanuel. Furthermore, Hunter has provided no evidence to demonstrate that the job duties of individuals in various positions across a variety of facilities are likely to be similar to that of an intensive care RN. Hunter provides no explanation, for example, how a nurse aide working in physical therapy and an intensive care RN might have job duties similar enough to warrant expanding discovery outside of the facility in which she worked.

Though a Rule 23 prima facie showing is not required, there are no facts before the court to establish that the variety of positions falling under Hunter's definition of "nursing staff" are similarly situated as to reasonably suggest inclusion in the class. Additionally, Hunter's request reaches across various types of facilities, implicating thousands of individuals and potentially burdening Legacy. Accordingly, limiting the scope of precertification is appropriate here. Limiting precertification discovery to Emanuel and Randall during the relevant time period will allow Hunter access to a variety of individuals across 132 unique units, all of which have different demands and different means of enacting Legacy's systemwide policy. At minimum, Hunter should be able to glean from the individuals disclosed whether the violative conduct alleged is a practice that is unique to the demands of intensive care units, or whether the problem extends across a broad spectrum of units and positions. If so, further precertification discovery may be warranted.

The court therefore limits the scope of precertification discovery to Emanuel, and by extension Randall. The court is cognizant, however, that even limiting discovery at this stage to the single facility where Hunter worked might nevertheless pose a burden because the individuals for which Legacy must account still number in the thousands. Accordingly, Legacy must provide

PAGE 16 – OPINION AND ORDER

a sampling of 600 individuals from all units at Emanuel during the relevant time period. The court thus GRANTS Hunter's motion, insofar as Legacy must now provide Hunter with information concerning collective and class members, but it declines to require such production to reach across all of Legacy's facilities and to all possible collective or class members.

B.  *The Information to Be Provided to Hunter*

Hunter requests the name, job title(s), last-known address, last-known phone number, last-known email address, dates of employment, location at which the employee worked, and social security numbers of all collective and class members. She argues such information is necessary to put her on equal footing with Legacy, and that disclosure will not prejudice Legacy. (Pl.'s Mot., at 8.) Specifically, Hunter asserts the *Belaire-West* notice procedure will neutralize any privacy concerns, and Legacy will bear virtually no cost to produce the information requested because such information is required to be kept and made available for inspection by law.[5] (*Id.* at 6.)

Legacy requests the court to limit the information it must provide to the employee name, last-known address, and last-known phone number to "reduce the burden on Legacy and protect the employees' privacy interests. (Defs.' Opp'n, at 9.) Legacy, however, fails to explain how it will be burdened by producing the additional information requested, particularly if discovery is limited to 600 individuals working at Emanuel. Furthermore, Legacy neglects to acknowledge that the *Belaire-West* notice Hunter has agreed to provide to class members will include a way for them to opt-out if they are concerned about their privacy. Privacy concerns thus do not present

---

[5] Hunter's argument that Legacy will bear "virtually no cost" to produce this information is without merit. Though she claims the information she seeks is required to be kept and made available for inspection by law, Hunter overstates those requirements. Both federal and Oregon regulations require an employer to preserve payroll records with the employee's name, home address, and occupation, along with a variety of job-specific information such as total wages paid each pay period. 29 C.F.R § 516.2; Or. Admin. R. 839-020-0080. Employers are not required to keep an employee's telephone number, email address, or specific location worked.

PAGE 17 – OPINION AND ORDER

good cause to limit the information to be produced. Accordingly, Legacy is to provide all information requested by Hunter, except for individuals' social security numbers, in complying with this court's order.

## *Conclusion*

For the reasons stated above, Hunter's Motion to Compel (ECF No. 43) is GRANTED, in part, and Legacy's Motion for a Protective Order (ECF No. 39) is DENIED. Legacy must provide Hunter with the name, job title, unit, last-known phone number, last-known email address, and dates of employment for a random sample of 600 individuals who worked at Emanuel or Randall during the relevant time period and meet the definition of "nursing staff" by October 24, 2019.

DATED this 30th day of September, 2019.

_____
JOHN V. ACOSTA
United States Magistrate Judge